CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

MAY 27 2009

JOHN F. CORCORAN, CLERK
BY: /s/
   DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

|  |  |
|---|---|
| ROBIN D. BELL,<br><br>        *Plaintiff*<br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        *Defendant* | Case No. 5:08cv00035<br><br>REPORT AND<br>RECOMMENDATION<br><br>By:   Hon. James G. Welsh<br>        U. S. Magistrate Judge |

      The plaintiff, Robin D. Bell, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ("the agency") denying her claim for disability insurance benefits ("DIB"), under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423, for the period between March 7, 1999 and January 1, 2005.[1] Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g). The Commissioner's Answer was filed on October 21, 2008 along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered November 13, 2008 this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] On January 25, 2001, the plaintiff protectively filed an initial application for DIB alleging disability beginning March 7, 1999 due to "frequent panic attacks [and] loss of concentration." (R. 58-61,103,114.) This claim was denied, and the plaintiff did not pursue her appeal rights. (R.37,39-41,330.) She protectively filed her current application for DIB on December 7, 2004, similarly alleging disability since March 7, 1999, and pursuant to the agency's initial consideration process she was found to be disabled as of January 1, 2005, but not before that date. (R.11,38,42-46,50,85-86,89,141,143.)

On appeal, the plaintiff's basic contention is that the administrative law judge ("ALJ") erred in making the determination that she was not disabled at any time prior to January 1, 2005, and *inter alia* she takes issue with the ALJ's failure to give significant decisional weight to the results of an April 2001 consultive psychological assessment by Kenneth Rosner, Ph.D. Each party has moved for summary judgment; no written request was made for oral argument,[2] and the case is now before the undersigned for a report and recommended disposition.

## I. Summary Recommendation

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and an appropriate final judgment be entered affirming the Commissioner's decision denying benefits.

## II. Standard of Review

The court's review in this case is limited to determining whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB before January 1, 2005. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence

---

[2] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

### III. Administrative History

After the agency's denial on reconsideration of the plaintiff's claim for DIB entitlement before January 1, 2005, she requested a hearing which was held on August 15, 2007 before an ALJ. (R.11,27-31,47-48,50-57,324-344.) The plaintiff was present, testified, and was represented by counsel. (R.36,48-49, 327-341.) Adina Leviton, a vocational witness, was also present and testified. (R.341-344.)

Utilizing the agency's standard sequential evaluation process, the plaintiff's claim for DIB entitlement before January 1, 2005 was denied by written administrative decision dated October 26, 2007. (R.11-26.) The plaintiff then sought Appeals Council review; it was denied, and the decision of the ALJ now stands as the Commissioner's final decision. (R.4-7.) *See* 20 C.F.R. § 404.981.

IV.     **Facts and Analysis**

The record in this case shows that the plaintiff was born in 1956 and was fifty-one years of age [3] at the time of the administrative hearing. (R.25,59,327.) She has a high school equivalent education (R.25,327), and her past relevant work was primarily as a pre-load supervisor for a parcel shipping company. (R.105-112,332-333,342.)

The plaintiff's medical records show that she was first seen and treated for mental health complaints on March 11, 1999. (R.181.) On that date she saw Dr. Floyd Bradd, her primary care physician, and reported that she had been experiencing a high level of anxiety since the preceding October. (*Id.*) As a treatment regime, Dr. Bradd initially started the plaintiff on Xanax; shortly thereafter, he added Paxil, and when her symptoms did not significantly abate, he referred her to Dr. Jonathan Anderson. (R.178-181,196-199,258-260.)

---

[3] At this age the plaintiff is classified as a "person closely approaching advanced age age 50-54)" and at this age an individual's will be considered by the agency along with any severe impairment(s) and limited work experience which may seriously affect the person's ability to adjust to other work. 20 C.F.R. § 404.1563(d).

4

At the conclusion of Dr. Anderson's initial psychiatric assessment on April 21, 1999, he confirmed Dr. Bradd's tentative panic disorder diagnosis; he noted some evidence of a depressive disorder, and he prescribed Klonopin instead of Xanax. (R.196-199.) Throughout the remainder of the year, Dr. Anderson continued to see the plaintiff monthly, or more often, and in December he concluded that the plaintiff's panic disorder [4] was relatively stable, was unlikely to improve significantly, and was sufficiently severe to keep her working at any job that entailed supervisory responsibilities.[5] (R183-195; *see also* R.157-173,254-257.) In an effort to help the plaintiff's condition to stabilize and permit her to return to work in a non-supervisory position, she was referred to a therapist (*See* R.254-256,267-269.) Although the plaintiff found the counseling effort to be "very helpful," her employment was terminated in March 2000, and she continued throughout the next two years to experience symptoms of her panic disorder. (R.161-169,246,251-254,272.)

In the history she gave to Dr. Kenneth Rosner in April 2001, the plaintiff reported that her right leg started shaking uncontrollably in March 1999, that any stress or change in her environment exacerbated the condition and that her condition often lead to crying and forgetfulness. (R.293,296.) She reported, however, that she had stopped seeing a psychiatrist and stopped taking the prescribed psychotropic medications because they were ineffective and the medications also had disturbing side effects. (*Id.*) She also reported difficulty sleeping and some isolation and withdrawal due to

---

[4] In November, Dr. Anderson's panic disorder diagnosis was confirmed by Dr. Russell McKelway as part of his consultive evaluation of the plaintiff's ongoing mental health "difficult[ies]." (R.185,267,269.) Dr. McKelway also suggested changes in the plaintiff's medication regime and her referral for day therapy. (R.267.)

[5] Despite a period of counseling which the plaintiff described as "very helpful," Dr. Bradd (the plaintiff's primary care physician) made essentially the same functional assessment in his medical report to the plaintiff's employer in March 2000. (R.285-287; *see also* R.168-169,272-273.)

5

problems explaining her symptoms. (R.294,297.) As part of his consultive mental status examination, Dr. Rosner found the plaintiff to be fully oriented, to be appropriately groomed and dressed, to be a good historian, and to exhibit no abnormal thought content. (*Id.*) However, he found her to be anxious and depressed, to exhibit poor concentration, and to be preoccupied with her condition. (R.294-295,297-298.) On the basis of these findings, Dr. Rosner concluded that "her rather marked symptoms" would make it "near impossible for her to perform work activities on a consistent basis." (R.295,298.)

Approximately six weeks later she saw Dr. Bradd for a medical exam. (R.157-159. Although he found her to have no acute medical problems, he noted her multiple chronic medical conditions, including her "chronic" depression and panic disorder. (*Id.*)

Beginning in the Spring of 2002, the record in this case indicates Dr. Eric Maybach became the plaintiff's primary care physician, and over the next three years he saw her on multiple occasions for a number of primarily transient medical problems. (R,220-244.) At the time she first saw Dr. Maybach, the plaintiff gave a history of anxiety and panic attacks, and his office note shows that she was given samples of Xanax to treat her symptoms. (R.234.) Dr. Maybach's office records, likewise, show that over the of the next three years he continued to give her samples of Xanax to treat her mental health symptoms. (R.221-222,224-226,230-231,234.)

It was, however, only after her husband's unfortunate passing in January 2005, that Dr. Maybach's records suggest a significant exacerbation of her symptoms. (R.221-222.) Two months

6

later Dr. Maybach noted that the plaintiff was "tearful [and] shakey" (*sic*) and reported difficulty with concentration, social contacts and insomnia. (R.221-223.) Consistent with Dr. Maybach's office notes, the following month Nancy Steinhorn-Galloway, M.A., L.P.C., found the plaintiff's voice, as well as her whole body, to exhibit "severe and incapacitating" involuntary tremors throughout an hour-long interview. (R.289.) Based on the results of her interview and testing, Ms. Steinhorn-Galloway concluded at the end of her consultive assessment that the plaintiff was suffering from an "acute" adjustment disorder "due to a significant grief process related to [her] husband's recent death." (R/289-292.)

Additionally, the administrative record contains the assessments of state agency psychological reviewers in 2000 and five years later in 2005. In April 2000 the reviewer concluded that, in the context of her ability to work, the plaintiff's stress-related affective disorder caused only a moderate impairment of her ability to maintain attention and concentration. (R.201-219.) In contrast, state agency reviewers in April and May 2005 concluded that the negative impact of her husband's death on the plaintiff's mental health had been significant and that she was now disabled due to marked limitations in her abilities to perform activities pursuant to a schedule or to maintain concentration, persistence, and pace. (R.299-318.).

After outlining and evaluating the medical record in considerable and after determining that the opinions of the non-examining state agency reviewers "reflect[ed] a reasonable interpretation of the evidence," ALJ concluded that the plaintiff's disability began January 1, 2005. (R.14-21,26.)

The plaintiff, however, argues that the ALJ erred in finding that she was not disabled before that date.

Fairly summarized, her argument on appeal is largely based on Dr. Bradd's March 1999 clinical diagnosis that she had a panic disorder with an acute panic attack (R.179-181), on the results of Dr. Rosner's April 2001 consultive psychological assessment (R.293-298), and on her testimony to the effect her condition did not significantly change between 1999 and 2005 (R.335-338,341).

Although this evidence was specifically considered by the ALJ, he concluded that it was not supported by the evidentiary record when viewed in its entirety. (R.13-26.) In accordance with the agency's sequential decisional process, he outlined and evaluated the evidence. He determined that the plaintiff's mental health problems neither met nor medically equaled either listing 12.06 [6] or 12.08.[7] He concluded that during the period before January 1, 2005 the plaintiff retained the functional ability to perform work at all exertional levels which did not require climbing, working at unprotected heights or dangerous machinery, and could be performed by an individual with moderate difficulties in social functioning, concentration, persistence and pace. And based on the vocational evidence, the ALJ further concluded that until January 1, 2005 the plaintiff remained able to perform the requirements of a number of representative occupations, including those of assembler, pre-assembler, or non-postal mail clerk.

---

[6] *Anxiety Related Disorders.*

[7] *Personality Disorders.*

8

Case 5:08-cv-00035-SGW-JGW   Document 16   Filed 05/27/09   Page 8 of 12   Pageid#: 65

As the ALJ carefully noted in his decision, he based these findings on both the medical evidence and on the scope of the plaintiff's self-described daily activities. *Inter alia* the ALJ cited the relative absence of abnormal or otherwise striking mental health findings in Dr. Anderson's April 1999 examination (R.14,198), Dr. Bradd's 1999-2000 observations that the plaintiff's leg tremors decreased in intensity with distraction (R.16-17,163,166,169), the absence of notations in Dr. Maybach's records before January 2005 which would suggest that the plaintiff was experiencing serious ongoing anxiety or panic attack symptoms (R.21,224-242), the extent of the plaintiff's animal rescue and other activities during the relevant time period (R.22-23,98-104,162,289,294-295,297-298), the relevant opinions of Dr. Bradd, Dr. Anderson, and the state agency reviewers in 1999 and 2000 (R.20, 163-168,183,201-219), and both the inconsistency of Dr. Rosner's assessment with treating source opinions and the relative absence of either supporting clinical or test findings (R.17-18,20).

As set-out in section I above, the court's role in this case is limited to an examination of the record to ascertain whether there is "substantial evidence" to support the Commissioner's final determination. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). On behalf of the Commissioner, it is the ALJ's responsibility to resolve questions of fact, to make explicit findings on all essential eligibility questions, and to articulate the evidentiary basis for his conclusions. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964); *Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984); *Gordon v. Schweiker*, 725 F.2d 231, 235-236 (4th Cir. 1984).

9

In the instant case, it is apparent that the ALJ fully and fairly examined the entire record. He articulated a reasoned and reasonable basis for his determinations, including the basis for his decision not to give substantial weight to Dr. Rosner's opinion, and for his determination that the plaintiff was not disabled within the meaning of the Act on any date before January 1, 2005.

It is not the province of the court to make the disability determination. The court's role is limited to determining whether the Commissioner's final decision is supported by substantial evidence. In this case, substantial evidence supports that decision. The recommendation that the decision of the Commission be affirmed is not intended to suggest in any way that the plaintiff has been free of anxiety and panic related difficulties since early 1999. The objective evidence, however, simply fails to demonstrate the existence of a condition before January 1, 2005 that could be reasonably expected to result in total disability within the meaning of the Social Security Act. Likewise, the administrative record in this case demonstrates that the plaintiff's claim and her evidence were all properly considered and fairly assessed by the ALJ.

## V. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. All facets of the Commissioner's final decision are supported by substantial evidence;

10

2. Substantial evidence supports the finding that the plaintiff had no condition, either singularly or in combination, that met nor medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1;

3. The ALJ did not err in his review of the plaintiff's psychiatric impairments and associated functional limitations;

4. The psychological assessment and opinions of Dr. Rosner were fairly and appropriately considered;

5. Substantial evidence supports the finding that the plaintiff was not disabled within the meaning of the Social Security Act on any date prior to January 1, 2005;

6. The plaintiff has not met her burden of proving her disability before January 1, 2005; and

7. The final decision of the Commissioner should be affirmed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING SUMMARY JUDGMENT to the defendant, DENYING plaintiff's claim, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within

ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.** Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 27th day of May 2009.

/s/ *James G. Welsh*
United States Magistrate Judge